**FILED**
**CLERK**
11/30/2012 9:38 am
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTER DISTRICT OF NEW YORK**
-------------------------------------------------------------X
PHILLIP A. PECORINO, ALDO MEDAGLIA,
and SHEWARD & SON & SONS d/b/a VISIONART,

Plaintiffs,

-against-

VUTEC CORPORATION, and FARRALANE
LIGHTING AUDIO AND VIDEO SYSTEMS, INC.,

Defendants.
-------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-CV-6312 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**LEASON ELLIS LLP**
*Attorneys for the Plaintiffs*
One Barker Avenue
Fifth Floor
White Plains, NY 10601
      By:    Cameron Sean Reuber, Esq.
              Jordan Grant Garner, Esq.
              Melvin C. Garner, Esq., Of Counsel

**HARRINGTON, OCKO & MONK, LLP**
*Attorneys for the Defendants*
81 Main Street
Suite 215
White Plains, NY 10601
      By:    Kevin J. Harrington, Esq.
              John Terrence A. Rosenthal, Esq., Of Counsel

**SPATT, District Judge.**

The Plaintiffs Philip A. Pecorino, Aldo Medaglia, and Sheward & Son & Sons, d/b/a

Visionart ("Visionart") commenced this action for infringement of United States Patent No.

5,264,765 ("the '765 Patent") under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*

Presently before the Court are two motions filed by the Defendants to transfer venue to the

Southern District of Florida pursuant to 28 U.S.C. § 1404(a) and/or to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Fed. R. Civ. P. 12(b)(6)" or "Rule 12(b)(6)").  For the reasons set forth below, the motion to transfer venue is denied and the motion to dismiss is granted in part and denied in part.

## I.    BACKGROUND

The Plaintiffs Philip A. Pecorino and Aldo Medaglia are residents of the State of New York and are the inventors and co-owners of the '765 Patent.  The '765 Patent was issued on November 23, 1993, for an invention entitled "Video Display Screen Cover."  (Compl. Ex. A.)

On October 17, 2005, Pecorino and Medaglia entered into a licensing agreement with Visionart, effective January 1, 2005.  Visionart is a corporation organized and existing under the laws of the State of California, with its principal place of business in Cosa Mesa, California. Visionart is the exclusive licensee under the '765 Patent.

The Defendant Farralane Lighting Audio and Video Systems Inc. ("Farralane") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Farmingdale, New York.  The Defendant Vutec Corporation ("Vutec") is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Pompano Beach, Florida.  Vutec sells a variety of projection screen and related products, both nationwide and internationally.  One such family of related products, which appears to be the basis for the instant litigation, is Vutec's ArtScreen™ line of products.

The complaint states that: (1) "Upon information and belief, Defendant Farralane has been distributing, offering for sale, leasing, and/or selling video display screen covers in this District, and throughout the United States, which the covers are made by Vutec."  (Compl., at ¶ 17); (2) "Upon information and belief, the covers distributed, offered for sale, leased, sold,

and/or offered for sale by Defendant Farralane are manufactured and supplied by Vutec."

(Compl., at ¶ 18); (3) "Upon information and belief, Defendant Vutec has been manufacturing,

distributing, offering for sale, licensing, leasing, and/or selling video display screen covers in this

District, throughout the United States, and abroad. Such video display screens have been

distributed and offered for sale and sold in this District through Defendant Farralane." (Compl.,

at ¶ 19); and (4) "Upon information and belief, Defendant Vutec's activities have been with

knowledge of the '765 Patent and Plaintiffs' patent rights therein." (Compl., at ¶ 20.)

## II. DISCUSSION

As set forth above, there are two pending motions to transfer pursuant to 28 U.S.C.

§ 1404(a) and/or to dismiss for failure to state a claim upon which relief may be granted pursuant

to Rule 12(b)(6) filed by each of the Defendants. However, as the two Defendants are

represented by the same attorney and have filed nearly identical motions, the Court will consider

the merits of the two motions simultaneously.

**A.** **As to the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)**

**1. Relevant Law**

The Defendants' motions are made pursuant to 28 U.S.C. § 1404(a), which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." 28

U.S.C. § 1404(a); see generally Filmline (Cross–Country) Prods., Inc. v. United Artists, 865 F.2d

513, 520 (2d Cir. 1989). "[T]he purpose of the section is to prevent the waste 'of time, energy

and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience

and expense." Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 809, 11 L. Ed. 2d 945

(1964); <u>Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.</u>, 415 F. Supp. 2d 370, 372 (S.D.N.Y. 2006).

"In any motion to change venue, the movant bears the burden of establishing the propriety of transfer by clear and convincing evidence." <u>Payless Shoesource, Inc. v. Avalon Funding Corp.</u>, 666 F. Supp. 2d 356, 362 (E.D.N.Y. 2009) (Spatt, J.); <u>accord</u> <u>Ford Motor Co. v. Ryan</u>, 182 F.2d 329, 300 (2d. Cir. 1950) <i>cert. denied</i>, 340 U.S. 851, 71 S. Ct. 79, 95 L. Ed. 624 (1950); <u>Neil Bros. Ltd. v. World Wide Lines, Inc.</u>, 425 F. Supp. 2d 325, 327 (E.D.N.Y. 2006) (Spatt, J.); <u>Excelsior Designs, Inc. v. Sheres</u>, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (Spatt, J.); <u>Citibank, N.A. v. Affinity Processing Corp.</u>, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003); <u>Hernandez v. Blackbird Holdings, Inc.</u>, No. 01 Civ. 4561, 2002 WL 265130, at *1 (S.D.N.Y. Feb. 25, 2002). A motion to transfer venue requires a two-part inquiry: first, whether the action might have been brought in the transferee court; and second, whether transfer is appropriate considering the convenience of both the parties and the witnesses, and in the interest of justice. <u>Fuji Photo Film</u>, 415 F. Supp. 2d at 372; <u>Berman v. Informix Corp.</u>, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998).

In determining the latter part of this inquiry, courts apply nine factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of witnesses; (6) the weight accorded to the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; and (9) trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances. <u>N.Y. Marine and General Ins. Co. v. Lafarge N. Am., Inc.</u>, 599 F.3d 102, 112 (2d Cir. 2010);

Employers Ins. of Wausau v. Fox Entm't Group, Inc., 522 F.3d 271, 275 (2d Cir. 2008); D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106–07 (2d Cir. 2006); Payless Shoesource, 666 F. Supp. 2d at 362–63; Laumann Mfg. Corp. v. Castings USA, Inc., 913 F. Supp. 712, 720 (E.D.N.Y. 1996). "Ultimately, '[t]he Court has broad discretion in balancing these factors." Payless Shoesource, 666 F. Supp. 2d at 363 (quoting Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 328 (E.D.N.Y.2006) (Spatt, J.)); In re Cuyahoga Equip. Corp., 980 F.3d 110, 117 (2d Cir. 1992) ("Further, motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis.").

### 2. Whether the Action Might Have Been Brought in the Transferee Court

The first relevant and necessary inquiry is whether the action might have been brought in the asserted transferee court, which in this case is the Southern District of Florida. See In re Hanger Orthopedic Group, Inc. Sec. Litig., 418 F. Supp. 2d 164, 168 n.3 (E.D.N.Y. 2006) ("A threshold inquiry is whether venue is proper in the transferee forum."). Venue in patent actions is governed by 28 U.S.C. § 1400(b), which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." A corporate defendant such as Vutec or Farralane "reside[s] in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

Whether the district court in Florida has in personam jurisdiction over Vutec or Farralane depends on (1) whether jurisdiction exists under the law of Florida; and (2) whether a Florida court's exercise of personal jurisdiction over the two corporations comports with federal due

process.  See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002).

Here, Vutec is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Pompano Beach, Florida.  In addition, Vutec's other principal place of business is in Coral Springs, Florida, which is within the judicial district of the United States District Court for the Southern District of Florida.  Thus, jurisdiction over Vutec would exist under the law of Florida and a Florida court's exercise of personal jurisdiction over Vutec would comport with federal due process.  Cf. Standard Brands Tele. and Appliance, Inc. v. Bank of New England-South, N.A., 717 F. Supp. 828, 829 (S.D. Fla. 1989) ("As Defendant BNE–SOUTH is not a Florida resident and is not licensed or registered to do business in the State of Florida, this Court may acquire jurisdiction over BNE–SOUTH, only pursuant to Florida's Long–Arm Statute").   Indeed, the Plaintiffs have conceded that the affidavits submitted by Vutec (DE 12 & 13) have established by clear and convincing evidence that Vutec is subject to personal jurisdiction in the Southern District of Florida.

The other Defendant Farralane raises the more complicated inquiry, because Farralane is a New York corporation domiciled in this district.  In Vutec's memorandum of law, it asserts that because the evidence in this case demonstrates that Vutec never sold any of the allegedly infringing products to Farralane (see Axman Decl., at ¶ 8), nor used, purchased, received, offered for sale, licensed, sold, or distributed any allegedly infringing products supplied by Vutec (see Farralane Decl., at ¶ 2), that Farralane is a "sham" or "shadow" defendant named solely to secure venue in this Court and thereby insulate the case from transfer.  In this regard, Vutec largely relies upon Encyclopedia Britannica, Inc. v. Magellan Navigation, Inc., 512 F. Supp. 2d 1169, 1175 (W.D. Wisc. 2007).

Interestingly, in Farrlane's motion to dismiss, the Defendants' counsel abandons the argument made by Vutec—that Farralane is a mere sham defendant—and simply states that "Farralane consents to personal jurisdiction in Florida and venue in the U.S. District Court for the Southern District of Florida." (Farralane Mem. at 8; see Farrell Decl., at ¶ 6.) Yet, the Plaintiffs point out in their opposition to Farralane's motion to dismiss that Farralane's recent acceptance of Florida jurisdiction at this stage of the proceedings is insufficient. Before this Court can properly transfer a case involving multiple defendants, it must first be determined that all defendants would have been subject to personal jurisdiction in the transferee court *at the time the case was originally filed*. Posven, C.A. v. Liberty Mut. Ins. Co., No. 02 Civ. 0623, 2004 WL 63497, at *7 (S.D.N.Y. Jan. 12, 2004) ("[A]n action might have been brought in another forum if, *at the time the action was originally filed*, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court.") (emphasis added); see also ACE Am. Ins. Co. v. Bank of the Ozarks, No. 11 Civ. 3146, 2012 WL 3240239, at *9 (S.D.N.Y. Aug. 3, 2012) ("In determining whether a proposed transferee court has personal jurisdiction over a defendant, courts must look to the state of affairs 'at the time of the bringing of the action.'"). Thus, the Plaintiffs contend that Farralane's subsequent consent to jurisdiction in the Southern District of Florida will not suffice for purposes of a § 1404(a) analysis.

The Court agrees with the Plaintiffs in this regard. The Supreme Court expressly stated in Hoffman v. Blaski, 363 U.S. 335 (1960), the following:

> 'If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where (the action) might have been brought.' If he does not have that right, independently of the wishes of the defendant, it is not a district 'where it might have been brought,' and it is immaterial that the defendant subsequently (makes himself subject by consent,

waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum).'

Id. (quoting Blaski v. Hoffman, 260 F.2d 317, 321, 469 (7th Cir. 1958)). "Courts in this Circuit routinely follow, as they must, the reasoning of Hoffman." Bayer Schera Pharma AG v. Sandoz, Inc., No. 08 Civ. 3710, 2009 WL 440381, at *5 (S.D.N.Y. Feb. 18, 2009). Accordingly, Farralane's subsequent consent is immaterial. See Kenwin Shops, Inc. v. Bank of Louisiana, No. 97 Civ. 907, 1999 WL 294800, at *2 (S.D.N.Y. May 11, 1999) (explaining that the "might have been brought" analysis "focuses on the time at which the action was commenced, not on subsequent events"). Of note, Farralane implicitly concedes this point, as in its Reply memorandum it reverts back to arguing once again that it is a mere shadow defendant.

Thus, the Court will now address Vutec's arguments and that of Farrlane on reply—namely, whether personal jurisdiction over Farralane in the transferee court is irrelevant because Farralane is a "sham" or "shadow" defendant.

There is a dearth of case law on the subject of sham defendants in the context of motions to transfer venue. Rather, the majority of cases on this topic arise in the setting of fraudulent joinder and motions to remand to state court. Nevertheless, precedent in this framework is analogous and thus highly instructive. In this context, a plaintiff seeking to prevent a defendant from removing a state court case may name additional non-diverse defendants as parties. A defendant who wants to remove may argue that such defendants are "sham" defendants and consequently "fraudulently joined" solely to prevent removal. See Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999) (fraudulently joined defendants do not bar removal); Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460–61 (2d Cir. 1998) (noting that a plaintiff may not add nondiverse parties with no real connection to the case).

With regard to the standards courts utilize in assessing fraudulent joinder in the removal scenario, at least one court in this circuit has looked to whether the addition of the allegedly sham defendant is "wholly and patently without any basis."  705 F. Supp. 918 (S.D.N.Y. 1989). However, the Second Circuit has also utilized what is referred to as the "no possibility" standard, stating that "[i]n order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."  Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998); See In re Fosamax Prods. Liab. Litig., No. 09 Civ. 4061, 2009 WL 3109832, at *2 (S.D.N.Y. Sept. 28, 2009) ("Most courts in this district have applied the 'no possibility' standard rather strictly." (footnote omitted)); Nemazee v. Premier, Inc., 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) ("Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a finding warranted." (citation omitted)).

While a district court is typically cautioned not to analyze the merits of the plaintiff's claims in a jurisdictional inquiry, a certain amount of analysis is inevitable when a defendant provides the court with sworn evidence in the form of an affidavit, declaration or deposition testimony, showing that the plaintiff's claims are neither proper nor substantiated.  See, e.g., Dacosta v. Novartis AG, No. 01 Civ. 800, 2002 U.S. Dist. LEXIS 21313 (D. Ore. Mar. 1, 2002) (finding the sales representative was a "sham defendant" who had been fraudulently joined after reviewing the sale representative's affidavit and facts developed during jurisdictional discovery). The rules regarding what type of evidence is allowed differs by jurisdiction, with some

jurisdictions allowing very limited piercing, and others allowing considerably more. For example, the Third and Tenth Circuits permit only limited piercing, and the Fifth Circuit allows piercing only to identify "discrete and undisputed facts" that would demonstrate a plaintiff cannot prevail against the resident defendant. See Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004). On the other hand, the Fourth and Eleventh Circuits permit a more extensive review of the record, but make clear that the district court should not make a decision on the merits. See Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999); Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).

There is also a line of cases specific to the patent context, in which courts generally will not permit the presence of a distributor as a codefendant with a manufacturer of the accused product to defeat a motion to transfer a case to a district where the transferee court would not have personal jurisdiction over the distributor, but would have jurisdiction over the manufacturer. For instance, in Oplus Technologies, Ltd. v. Sears Holdings Corp., No. 11 Civ. 9029, 2012 WL 2400478, at *3–*4 (N.D. Ill. June 21, 2012), the court granted a motion to sever Sears as being a "perhipheral defendant" to the action, and transferred the suit against the manufacturer to the manufacturer's home forum. The Oplus court found that Sears' involvement with the allegedly infringing products was, at best, minimal because Sears purchased only seventeen units of only one of the accused products and it was unclear what, if anything, the claims against Sears could contribute to Oplus's infringement action against the manufacturer. Thus, because the obvious reason Oplus joined Sears was to establish venue, the court found it appropriate to sever the claims against Sears and transfer venue.

Finally, in Encyclopedia Brittanica, Inc. v. Magellan Navigation, Inc., 512 F. Supp. 2d 1169 (W.D. Wis. 1169), a case which is heavily relied upon by Vutec and Farralane, the

defendants filed a joint motion to sever defendant American TV from the case and to transfer the case to the Western District of Texas. The court explained that there are "several circumstances where a common-sense approach in applying 28 U.S.C. § 1404(a) has required exceptions to the Hoffman rule, and accordingly transfer of a case to a particular district has not been barred even though the plaintiff could not as a matter of right have brought the same exact case in the transferee district." Id. at 1173. One such exception was where "[c]ourts have authorized severance and transfer of claims as to less than all defendants in a multi-defendant suit upon a determination that the defendant as to whom venue is improper in the transferee district is only peripherally involved in the litigation," even though the plaintiff could not have brought its case (i.e., all its claims against all defendants) in the transferee district. Siemens Aktiengesellschaft v. Sonotone Corp., 370 F. Supp. 970, 972 (N.D. Ill. 1973) (citations omitted); see Wild v. Subscription Plus, Inc., 292 F.3d 526, 531 (7th Cir. 2002), cert. denied, 537 U.S. 1045, 123 S. Ct. 619, 154 L. Ed. 2d 517 (2002) (concluding that to avoid injustice "there is no absolute bar to the transfer of a multi-defendant suit to a district in which one of the defendants cannot be served."); see also Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960) (espousing a common sense approach and directing that "where it might have been brought" not act as an absolute bar to transfer when the surrounding circumstances favor transfer to best serve convenience and/or the interests of justice, even when the plaintiff could not as a matter of right have brought the exact same case in the transferee district).

The Encyclopedia Britannica court went on to note that the only road block preventing the plaintiff from bringing the case as a matter of right in the transferee district was the inclusion of America TV as a defendant. It then found that it was included as a defendant "solely as an

attempt to insulate this case from transfer." 512 F. Supp. 2d at 1174. The basis for this finding is particularly relevant to the present case:

> Although American TV's inclusion in this case is not based on fiction, its peripheral and insignificant role in this case makes it at most the shadow of a real party. For example, American TV's absence from the development and manufacturing of the allegedly infringing navigation system devices places it in a position where it cannot defend against the infringement claims, which are the core of this case.

> Furthermore, the fact that American TV is not a large retail seller of the allegedly infringing devices lends support to the assertion that it is nothing more than a shadow party used to insulate this case from transfer. . .

Id. at 1175.

In view of this varying but pertinent authority, the Court will now explore the facts as alleged in the instant case.

The President of Farralane, Michael Farrell, acknowledges that Farralane purchases audio, video, and lighting equipment from more than 80 manufacturers and resells the equipment to the public through its facility located in this district. However, it has never participated in the design, development, or manufacture of those products. One of the manufacturers from which Farralane purchases and resells products is Vutec. But, in a declaration of Michael Farrell in support of the Defendant Vutec's motion to transfer venue, he states that based upon his review of the company's business records and personal knowledge of its business operations, Farralane has never used, purchased, received, offered for sale, licensed, sold, imported, or distributed any ArtScreen or other product manufactured or supplied by Vutec that could be considered to be a video display screen cover. He also declares that "[n]either Farralane nor, to the best of [his] knowledge, any of its officers or employees, was ever involved in the development or manufacture of any of Vutec's products, including Vutec's ArtScreen line of products." (Farrell

Decl. 1, at ¶ 3.) Further, he states that neither Farralane nor any of its officers or employees has any documents or other knowledge of facts that could be considered related to the present action.

On the other hand, the Plaintiffs have submitted the Declaration of Louise Triano, who is married to the Plaintiff Pecorino. Triano states that Pecorino asked her to contact Vutec to inquire about purchasing an ArtScreen. She contacted Shana Gardner, the Eastern Regional Account Manager for Vutec, and eventually was put in touch with Ira Friedland from the John B. Anthony Company. Friedland confirmed that the John B. Anthony Company was a regional representative of Vutec and handled the ArtScreen product. Triano asked if there was a dealer on Long Island where she could view the product. On Monday, October 3, 2011, Friedland sent Triano an email stating: "Kindly reach out to Sean or Mike at Farralane Lighting and Audio." (See Triano Decl. Ex. B.)

The facts here present the Court with a difficult question. However, the Court ultimately need not make a final determination in this regard. This is because even if Farralane were considered to be a "sham" defendant and disregarded for purposes of the transfer analysis, the factors considered extensively below do not weigh in favor of transfer. Thus, the Court will not determine whether the case could have been brought in the Southern District of Florida at the time of filing.

### 3. As to the Convenience and Justice Factors

Putting aside the question of whether the case could have been brought in the Southern District of Florida, the Court will assess the remaining factors relevant when considering a transfer of venue.

## a. Convenience of the Parties

"The convenience of both party and non-party witnesses is probably the single most important factor in the analysis of whether transfer should be granted." Wagner v. N.Y. Marriott Marquis, 502 F. Supp. 2d 312, 315 (N.D.N.Y. 2007) (internal quotation marks and citation omitted). Although "the convenience of non-party witnesses is accorded more weight than that of party witnesses," as will be discussed further below, party witnesses are still relevant. ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008). "The logical relevant starting point in determining the convenience of the parties is their residence." Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 328 (E.D.N.Y. 2006)).

The two Plaintiffs in this case, Pecorino and Medaglia, inventors and co-owners of the '765 Patent, reside as individuals in New York State, within the jurisdiction of the Eastern District. The third and final Plaintiff, VisionArt, is a licensee of the patent and a California corporation. Representatives of VisionArt will be obligated to travel a great distance regardless of whether this case is transferred, but it has consented to litigating in New York under its licensing agreement with Pecorino and Medaglia. Accordingly, the Eastern District of New York is a more convenient forum than the Southern District of Florida for all three Plaintiffs.

On the other hand, the Defendant Vutec is a Florida corporation with its principal place of business in Coral Springs, Florida. Vutec also has one other place of business in Pompano Beach, Florida. Both places of business are located in Broward County, Florida, which is within the jurisdiction of Florida's Southern District. Vutec contends that it conducts all of its business in Florida and would be inconvenienced by having to travel more than 1,000 miles to litigate in New York. (Def. Vutec Corp.'s Mem. of Law in Supp. of Mot. to Transfer Venue, 2.) Vutec also argues that its President, Howard L. Sinkoff, a key witness, is 82 years old and has several

medical conditions that impair his ability to travel. (Decl. of Howard L. Sinkoff in Supp. of Def.

Vutec. Corp.'s Mot. to Transfer Venue or Dismiss Compl., at ¶¶ 1–2.)

   While the Court is sympathetic to Mr. Sinkoff's situation, there is no evidence indicating

that he is medically unable to travel.  Also, in situations where elderly parties have argued that

travel is greatly burdensome but still feasible, parties have stipulated to conduct videotape

depositions to minimize the difficulty of conducting litigation.  See, e.g., Caputo v. Holland Am.

Line, Inc., No. 08 Civ. 4584, 2009 WL 2258326, at * 4 (E.D.N.Y. July 29, 2009); see also

Goldweber v. Harmony Partners Ltd., 671 F. Supp. 2d 392, 936 (E.D.N.Y. 2009) (noting that

despite one party's poor health and limited finances, all of the opposing party's witnesses would

be inconvenienced if the case were transferred); Joyner v. Toatley, No. 85 Civ. 3071, 1985 WL

3118, at *4 (S.D.N.Y. Oct. 17, 1985) (mentioning plaintiff's request that all depositions and

physical examinations of 76-year-old plaintiff be held in New York given her burden of traveling

to litigate in North Carolina, as her personal convenience was outweighed by the advanced age

of the defendants and the youth of several witnesses).

   Still, in light of the distance that Vutec representatives would have to travel in order to

litigate, the Southern District of Florida is a more convenient forum for Vutec.  For the same

reason that it would be inconvenient for three plaintiffs to travel to the Southern District of

Florida, it would be inconvenient for one defendant, Vutec, to travel to the Eastern District of

New York.  See Defenshield Inc. v. First Choice Armor & Equip., Inc., No. 10 Civ. 1140, 2012

WL 1069088 (N.D.N.Y. Mar. 29, 2012).  Cf. Millenium, L.P. v. Hyland Software, Inc., No. 03

Civ. 3900, 2003 WL 22928644 (S.D.N.Y. Dec. 10, 2003) ("The convenience of this forum to

one witness, even if he is the president of plaintiff, is outweighed by the inconvenience that

would result to the many other witnesses if they were required to testify here").

In sum, the Court is faced with two plaintiffs that reside in the district, one plaintiff that consents to jurisdiction in the district, and one Defendant that does not reside here.   Second Circuit courts "have emphasized that 'a forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel.'" Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 10 (2d Cir. 1995) (quoting Calavo Growers of California v. Generali Belgium, 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J., concurring), *cert. denied*, 449 U.S. 1084, 101 S. Ct. 871, 66 L. Ed. 2d 809 (1981)); Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, 843 (S.D.N.Y. 2012).  Furthermore, "[t]ransfer of a venue should not merely shift the burden of inconvenience from one party to the other."  Invivo Research, Inc. v. Magnetic Resonance Equip. Corp., 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000).  As a result, the Court finds that because several of the parties either reside here or consent to jurisdiction here versus one defendant that does not, this factor weighs slightly against transfer.

### b. Convenience of the Witnesses

Aside from party witnesses, "[t]he convenience of the witnesses is probably the single most important factor in the [§ 1404] transfer analysis."  Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) (citing Intria Corp. v. Intria Corp., No. 00 Civ. 7198, 2000 WL 1745043, at *2 (S.D.N.Y. Nov. 27, 2000)); Invivo Research, Inc. v. Magnetic Resonance Equip., 119 F. Supp. 2d 433, 436 (S.D.N.Y. 2000).  Moreover, "[t]he convenience of non-party witnesses is accorded more weight than that of party-witnesses."  ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 546 (S.D.N.Y. 2008) (quoting Indian Harbor Ins., Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) (internal citations omitted)). "Because of the importance of this factor, the party seeking transfer must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover."

Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 185–86 (E.D.N.Y. 2003) (internal citations and quotations omitted). "In considering the convenience of the witnesses, the Court should 'not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the Court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.'" Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) (quoting Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)).

Vutec has identified seven witnesses who reside within the jurisdictional boundaries of the Southern District of Florida, six of whom are current employees of Vutec and one who is a former employee. They are expected to testify as follows: (1) Vutec's President, Howard L. Sinkoff, who "is expected to testify about the circumstances which led Vutec to develop its ArtScreen line of products, as well as the design, development, sales, and marketing. . ."; (2) Vutec's Vice-President of Manufacturing, Raul Passalacqua, who "is expected to testify about the manufacturing, packaging, and shipment of Vutec's ArtScreen line of products"; (3) Vutec's General Manager, Allen M. Axman, who is "expected to testify about the circumstances which led Vutec to develop its ArtScreen line of products, as well as the design, development, sales, manufacturing costs, and marketing of Vutec's ArtScreen products"; (4) Vutec's Marketing Director, Michael Palmisano, who is "expected to testify about financial and accounting information relating to Vutec's ArtScreen line of products"; (5) Vutec's Controller, Edward Olsomer, who is "expected to testify about financial and accounting information relating to Vutec's ArtScreen line of products"; (6) an Engineer of Vutec, Tibisay Montero, who is "expected to testify about the operation, assembly, and installation of Vutec's ArtScreen line of products"; and (7) a former Engineer of Vutec, Hai Nguyn, who is expected to testify about the

design, development, assembly, installation, and operation of Vutec's ArtScreen line of products." (Sinkoff Decl., 33). While the testimony of these witnesses appears relevant and entitled to some weight in favor of transfer, there are two mitigating circumstances that the Court takes into consideration.

First, of the seven witnesses identified by Vutec, six are current employees and one is a former employee, so their inconvenience does not weigh as heavily as inconvenience to non-party witnesses. See Payless Shoesource, Inc. v. Avalon Funding Corp., 666 F. Supp. 2d 356, 364 (E.D.N.Y. 2009) (noting that the inconvenience of employees or agents of the parties does not weigh as heavily as inconvenience to non-party witnesses); Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) (recognizing that of the defendant's eighteen witnesses, eleven were either party witnesses or employees of the parties, the convenience of whom carried less weight that of non-party witnesses, generally). Even considering Vutec's former employee, Nguyn, a "non-party witness for venue purposes", former employees are not entitled to the same deference shown to other non-party witnesses because they are more likely willing to attend trial than other non-party witnesses. Pilevesky v. Suntrust Bank, No. 10 Civ. 2290, 2010 WL 4879006, at *3 (E.D.N.Y. Nov. 22, 2010) (recognizing former employees as non-party witnesses); Praxair, Inc. v. Morrison Knudsen Corp., No. 00 Civ. 892, 2001 WL 118585, at *4 (W.D.N.Y. Feb. 6, 2001) ("former employees are more likely to willingly attend than are non-party witnesses"). Nonetheless, "the convenience of party-witnesses is still relevant and thus not wholly insignificant." Pilevesky, 2010 WL 4879006, at *3.

Second, in a similar patent infringement case, the Southern District of New York placed greater emphasis on witness testimony that pertained to the technology, design, and development of the allegedly infringing product, as compared to the testimony that concerned the supply,

distribution, marketing and/or sales of the product.  See Fuji Photo Film Co., Ltd. v. Lexar

Media, Inc., 415 F. Supp. 2d 370, 373–74 (S.D.N.Y. 2006) ("The testimony of Fuji U.S.A.'s

witnesses, on the other hand, will be limited to Fuji U.S.A.'s marketing and sales activities—

evidence that relates to damages and becomes relevant only after the infringement issues are

resolved").  In an infringement action, the most critical witnesses may be "those officers and

employees who were involved in the design, production, and sale of the [allegedly infringing]

products."  ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) (citing

AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 529 (S.D.N.Y.

2004)); see also Int'l Secs. Exch., LLC v. Chicago Bd. Options Exch. Inc., No. 06 Civ. 13445,

2007 WL 1541087, at *3 (S.D.N.Y. May 24, 2007) ("In the context of a patent infringement suit,

a court should give particular consideration to individuals who can testify about the technology

of the allegedly infringing inventions"); Fuji Photo, 415 F. Supp. 2d t 373 ("The key issues in a

patent infringement suit involve the technology of the inventions claimed in the patents-in-

suit.").  Here, at most, only four witnesses—Sinkoff, Axman, Montero, and Nguyn—will be

testifying to technology, design, and/or development of Vutec's ArtScreen line of products.

　　　　With regard to Farralane, it asserts that the technology involved in this action does not

relate to any of the Vutec products Farralane has advertised or sold.  Consequently, Farralane

claims that it cannot identify any witnesses that would have information relating to the

technology at issue.

　　　　On the other hand, the Plaintiffs have identified two party-witnesses and two non-party

witnesses.  Party-witnesses Pecorino and Medaglia assert that they will testify to the facts and

circumstances surrounding the conception of the '765 Patent, its reduction to practice, and the

prosecution of the invention claimed in the patent.  (Pl.'s Opp. at 91.)  The Plaintiffs' first non-

party witness, Richard Katz, a New York resident located in the jurisdiction of the Eastern

District of New York, will testify about the re-examination proceedings conducted as a result of

Vutec's citation of prior art in previous proceedings.  The Plaintiffs' second non-party witness,

Joseph Lerch, a New Jersey resident located within the subpoena power of the Eastern District of

New York, will testify as to the application, prosecution, and issuance of the '765 Patent.  The

location of the Plaintiffs' witnesses and the quality of their expected testimony indicates that

New York is a more convenient forum for the Plaintiffs' witnesses.

The Plaintiffs further argue that their two non-party witnesses, two patent attorneys, will

provide testimony of "separate, distinct, and unique" quality, while Vutec's only non-party

witness, Mr. Nguyn, will provide testimony that is "duplicative of Mr. Montero's".  The Court

disagrees.  Although Mr. Nguyn and Mr. Montero were both engineers for Vutec, both

individuals "plainly possess important knowledge about the [company's engineering] practices . .

. and other topics at the core of the plaintiff's lawsuit."  In re Collins & Aikman Corp. Sec.

Litig., 438 F. Supp. 2d 392, 395 (S.D.N.Y. 2006); cf. Cali v. E. Coast. Aviation Serv., Ltd., 178

F. Supp. 2d 276, 294 (E.D.N.Y. 2001) (describing plaintiffs' twenty-one potential witnesses,

sixteen of whom shared three positions, as likely cumulative and irrelevant).  Mr. Montero is

expected to testify as to the "operation, assembly, and installation" of Vutec's ArtScreen, while

Mr. Nguyn is expected to testify as to the "design, development, installation, and operation" of

Vutec's ArtScreen.  (Sinkoff Decl., 33.)  While some of this testimony may overlap, a significant

portion of it may be non-cumulative as to different engineering aspects of Vutec's ArtScreen,

which is information that is highly relevant to the Plaintiffs' lawsuit.

It is well-settled that the party-witnesses from both sides would find it more convenient to

appear closer to where they work; specifically, New York for the Plaintiffs and South Florida for

the Defendant Vutec. The same is presumably true for employee-witnesses of the parties. Thus, the convenience of non-party witnesses is the crucial issue. ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008). In sum, the Defendant Vutec plans to call a combined total of six party and employee witnesses, and just one non-party witness (Nguyn), who is a former employee. Four of these seven witnesses will testify as to the design, development, and/or technology of the allegedly infringing product. All of the Defendant's seven witnesses would prefer to litigate in the Southern District of Florida. The Plaintiffs plan to call two party witnesses, who will testify as to the invention claimed in the patent, and two non-party witnesses, who will testify as to prior litigation concerning the patent, and its past history with the Defendant. All four of the Plaintiffs' witnesses would prefer to litigate in the Eastern District of New York. For these reasons, the Court finds this factor weighs slightly in favor of the Plaintiffs and thus, against transfer.

### c. Relative Means of the Parties

Where an apparent disparity exists between the parties, such as when an individual sues a large corporation, the court should consider the relative means of the parties. Schwartz v. Marriott Hotel Servs., Inc., 186 F. Supp. 2d 245, 251 (E.D.N.Y. 2002) (citing Pall Corp. v. PTI Techs., Inc., 992 F. Supp. 196, 200 (E.D.N.Y. 1998)); Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 989 (E.D.N.Y. 1991). In the present case, the individual Plaintiffs are employed as a schoolteacher and a small business owner, respectively, while Defendant Vutec is a corporation that has been in operation for over 34 years and employs 120 people. "A party arguing *for or against* transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." Neil Bros. Ltd. v. World Wide

Lines, Inc., 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006) (quoting Federman Assocs. V. Paradigm Medical Indus., Inc., No. 96 Civ. 8545, 1997 WL 811539, at *4 (S.D.N.Y. Apr. 8, 1997)).

Vutec points to the declarations of its President and General Manager to show that "the costs involved with sending several Vutec employee witnesses to trial . . . and the impact of having several members of upper management away from Vutec's offices . . . will have a substantial, negative financial effect" on Vutec. Vutec contends this would impose a greater overall financial impact and burden on Vutec than it would for the two individual Plaintiffs to litigate in the Southern District of Florida. This argument is weakened, however, because Vutec offers no documentation beyond declarations demonstrating that it would be prohibitively expensive for Vutec to prosecute in the current district. See Scherillo v. Dun & Bradstreet, Inc., 684 F. Supp. 2d 313, 329 (E.D.N.Y. 2010) ("Other than conclusory allegations in his affidavit, [defendant] has not produced documentation that litigating the case in [Florida]—as compared to New York—would be prohibitively expensive"); see also Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 332 (E.D.N.Y. 2006) (reasoning that a party's argument pertaining to this factor was weakened because he offered no documentation beyond a declaration to support that it would be prohibitively expensive to prosecute the action in a given jurisdiction).

In response, the Plaintiffs first claim that Pecorino and Medaglia, as a teacher and small business owner, respectively, jointly have means substantially less than a mid-sized corporation like Vutec. The Plaintiffs argue that transfer of venue to the Southern District of Florida would require the Plaintiffs to fund their own transportation and accommodations, as well as put their full-time jobs and livelihoods on hold. The Plaintiffs claim this would result in a "far more detrimental financial and familial impact" as compared to Vutec, who would merely have to send a handful of its 120 employees to New York for trial. However, like the Defendant Vutec, the

Plaintiffs have failed to offer any documentation, beyond the declaration of Cameron S. Reuber, their counsel, that supports their argument that it would be "prohibitively expensive to prosecute the action in [New York]." Neil Bros., 425 F. Supp. 2d at 332.

In addition, the Plaintiffs argue that transferring the case to the Southern District of Florida would force them to incur the additional expense of local counsel in Florida. Accordingly, and in reliance on Neil Brothers, the Plaintiffs contend that this would require substantial time and expense in terms of training and education as to the technology at issue and factual underpinnings of the dispute. The Plaintiffs' reliance on Neil Brothers is questionable, however, as the court there suggested that while the concern of additional expenses incurred as a result of obtaining local counsel is a legitimate one, the plaintiff there erroneously assumed it would "hire local counsel in addition to, rather than in place of, its current counsel." Neil Bros. 425 F. Supp. 2d at 332. Furthermore, there is no indication that the Plaintiffs' current counsel could not appear *pro hac vice* in the Southern District of Florida. See Matta v. Roswell Park Cancer Institute Corp., No. 11 Civ. 599, 2011 WL 3104889, at *6 (S.D.N.Y. July 26, 2011); Larew v. Larew, No. 11 Civ. 5571, 2012 WL 87616 (S.D.N.Y. Jan. 10, 2012). Thus, the arguments concerning additional legal expenses entail little merit. See, e.g., Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (E.D.N.Y. 1998) (limiting the weight of this factor where a plaintiff is suing a large corporation that likely has greater assets, but has failed to make a showing of undue hardship).

Though an apparent disparity exists between the individual plaintiffs and the corporate defendant, neither party has offered sufficient documentation to show that a transfer or the lack thereof would be unduly burdensome to finances. As a result, Vutec has failed to meet its

burden of demonstrating that this matter should not be transferred based on financial

considerations, and this factor weighs against transfer.

### d. Locus of Operative Facts and the Relative Ease of Access to Sources of Proof

Next, the Court will look at the locus of operative facts.  "The locus of operative facts is a

'primary factor' in a motion to transfer venue."  Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.,

415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006) (citing ZPC 2000, Inc. v. SCA Group, Inc., 86 F.

Supp. 2d 274, 279 (S.D.N.Y. 2000)); Millennium, L.P. v. Hyland Software, Inc., No. 03 Civ.

3900, 2003 WL 22928644 (S.D.N.Y. Dec. 10, 2003); Invivo Research, Inc. v. Magnetic

Resonance Equip. Corp., 119 F. Supp. 2d 433, 439 (S.D.N.Y. 2000).  "In determining the locus

of operative facts a court must look to the site of events from which the claim arises."

MasterCard Int'l, Inc. v. Lexcel Solutions, Inc., No. 03 Civ. 7157, 2004 WL 1368299 (S.D.N.Y.

June 16, 2004) (quoting Transatlantic Reinsurance Co. v. Continental Ins. Co., No. 03 Civ. 3227,

2003 WL 22743829, at *5 (Nov. 20, 2003)).  "This includes consideration of the relative ease of

access to the sources of proof."  Pall Corp. v. PTI Techs., Inc., 992 F. Supp. 196, 200 (E.D.N.Y.

1998) (internal citations omitted).

Interestingly, this factor presents what appears to the Court to be a split of authority.  In

particular, when assessing the locus of operative facts in the context of a patent infringement

action, it is not entirely clear whether the Court should look to the patented product or the

allegedly infringing product.  On one hand, courts within the Second Circuit have held that

"[o]perative facts in a patent infringement action include those relating to the design,

development, and production of a patented product."  Invivo Research, Inc. v. Magnetic

Resonance Equip. Corp., 119 F. Supp. 2d 433, 439 (S.D.N.Y. 2000); see Fuji Photo Film Co.,

Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006).

On the other hand, courts in this circuit, including this specific Court, have held that "[t]he locus of operative facts in a patent infringement case usually lies where the allegedly infringing product was designed, developed, and produced." Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 330–31 (E.D.N.Y. 2006). Based on this Court's decision in Neil Bros., in a 2009 patent infringement action, the Federal Circuit held that the location of the defendant's documents weighed in favor of venue being transferred to that location, because the bulk of the relevant evidence is in the possession of the accused infringer. In Re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citing Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 330–31 (E.D.N.Y. 2006)). In addition, in an unreported decision titled Ratner v. Martel Electronics Corporation, No. 07 Civ. 4742, Judge Seybert ruled that in a patent infringement case the locus of operative facts was in the District of New Hampshire "[b]ecause the alleged infringing product was designed, developed, and produced by [the defendant] in New Hampshire." (Memorandum and Order, 07–CV–4742 (JS)(ARL), at * 14, Sept. 30, 2008, ECF No. 52.) Moreover, Judge Seybert held that "[p]laintiff's contention that his documents and records are located in New York is irrelevant; it is the location of the development and production of the allegedly infringing product, as well as the documents related to such product, that is relevant to this factor." Id. at * 15 (citing Fuji Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006)).

Therefore, a number of courts have held that in an action for patent infringement, the transferee forum is the locus of operative facts if the "design, development, and some of the marketing of the product allegedly infringing plaintiff's patent occurred in the transferee forum and the designers, developers, and marketers live and work in that forum." Millennium, L.P. v. Dakota Imaging, Inc., 03 CIV.1838 RWS, 2003 WL 22940488 (S.D.N.Y. Dec. 15, 2003)

(quoting Weschler, 1999 WL 1261251, at *3); See Coloplast, 25 U.S.P. Q.2d at 1550 (transferring patent infringement action when operative events such as alleged infringement, manufacture, and sales had occurred in transferee forum); see also Wechsler v. Macke Int'l Trade, Inc., 99 CIV. 5725, 1999 WL 1261251 (S.D.N.Y. Dec. 27, 1999).

This Court now finds that both lines of precedent are correct, and that "[d]ue to the nature of the clams [the] [P]laintiffs assert, there are several loci of operative facts." Atl. Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 696–97 (S.D.N.Y. 2009) (citing Adams v. Key Tronic Corp., No. 94 Civ. 0535, 1996 U.S. Dist. LEXIS 19244 at *12 n. 1 (S.D.N.Y. Dec. 31, 1996) (noting that "venue analysis may determine that there are several loci of operative facts")). In other words, because both the patented product and the allegedly infringing product are highly relevant to the claims at issue, the Court could potentially look to either as the locus of operative facts. In Children's Network, LLC v. PixFusion LLC, the court held that "[i]n patent cases, the locus of operative facts usually lies where *either* the patent-in-suit or the allegedly infringing product was designed, developed, and produced." 722 F. Supp. 2d 404, 413 (S.D.N.Y. 2010) (emphasis added). Other courts in this district have reached a similar conclusion. See, e.g., Audiovox Corp. v. South China Enterprise, Inc., No. 11 Civ. 5142, 2012 WL 3061518, at *8 (E.D.N.Y. July 26, 2012) (" '[i]n patent cases, the locus of operative facts usually lies where either the patent-in-suit or the allegedly infringing product was designed, developed, and produced,' Children's Network, 722 F. Supp. 2d at 413, and, here, the Patents– In–Suit were developed by inventors in New York and the allegedly infringing products were produced in Hong Kong.").

Here, the allegedly infringing product was designed, developed, and is produced in Southern Florida. Vutec's place of business and employees, including its Marketing Director,

are all located in South Florida. In addition, all of Vutec's documents and records are located in South Florida. (See Allen M. Axman Aff., at ¶ 6 ("All documents and things owned or controlled by Vutec relating to the design, development, manufacture, sale, offer for sale, and distribution of all of Vutec's products are located in South Florida."). Thus, one locus of operative facts is the asserted transferee forum. See Bionx, 1999 WL 342306,*4 (holding that transferee forum, Indiana, was locus of operative facts because product allegedly infringing plaintiff's patent had been designed, developed, and marketed in Indiana, some of the material transactions had occurred in Indiana, and individuals who developed and manufactured product lived and worked in Indiana). Because Farralane disputes having ever purchased, advertised, or sold any of Vutec's ArtScreen products, Farralane claims that it has no documents or records relating to such products.

In contrast, the '765 Patent was conceived of, reduced to practiced, prosecuted, re-examined, and licensed in New York. Thus, New York is another locus of operative facts. See Devenshield Inc. v. First Choice Armor & Equip., Inc., No. 10 Civ. 1140, 2012 WL 1069088, at *13 (N.D.N.Y. Mar.29, 2012) ("Operative facts in a patent infringement action include those relating to the design, development, and production of a patented product.").

"Also relevant to consideration of [the] factor [of locus of operative facts] is the area in which the allegedly infringing device was sold or offered for sale." See Defenshield Inc. v. First Choice Armor & Equipment, Inc., No. 10 Civ. 1140, 2012 WL 1069088, at *13 (N.D.N.Y. March 29, 2012). Thus, the Court also looks to the presence of the defendants in the state and the percentage of sales in the forum. Both parties agree that approximately eight percent of Vutec's nationwide sales of the allegedly infringing product occurred in New York. However, "[w]here a party's products are sold in many states, sales alone are insufficient to establish a

material connection to the forum and to override other factors favoring transfer." Bionx

Implants, 1999 WL 342306, at *4 (quoting Invivo Research, Inc. v. Magnetic Resonance Equip.

Corp., 119 F. Supp. 2d 433, 439–40 (S.D.N.Y. 2000)). See also Walker v. Jon Renau Collection,

Inc., 423 F. Supp. 2d 115, 118–19 (S.D.N.Y. 2005) ("Where the nexus of the allegedly infringing

activity is in the transferee District, it is insufficient to find a connection to New York based

solely on sales of the product that took place here.").

The Plaintiffs acknowledge that Vutec engages in interstate and international business

dealings. Vutec's sales of ArtScreen products into the Eastern District have encompassed less

than three percent of Vutec's nationwide sales during the six years preceding this action, and

therefore, ninety-seven percent of its sales occurred outside of the Eastern District. Vutec's

small percentage of sales in New York establishes, at best, a minimal connection with this

district, but does not constitute a material connection sufficient for venue purposes. See Neil

Bros., 425 F. Supp. 2d at 331; Fuji Photo Film, 415 F. Supp. 2d at 375.

Ultimately, the Court finds that as the Southern District of Florida and the Eastern

District of New York are both loci operative facts, this factor is neutral.

**e.  The Availability of Process to Compel the Attendance of Witnesses**

The fifth factor examines the Court's ability to compel the attendance of unwilling

witnesses. A district court can only subpoena non-party witnesses within its district or within

100 miles of the district. See Fed. R. Civ. P. 45(c)(3)(B)(ii). "This factor is generally relevant

only with respect to third-party witnesses, because employee witness are subject to compulsory

process in either forum by virtue of their employment relationship with a party." Invivo

Research, Inc. v. Magnetic Resonance Equip. Corp., 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000)

(internal citations omitted); Advanced Fiber Techs. Trust v. J & L Fiber Servs., Inc., No. 07 Civ.

1191, 2008 WL 4890377, at *4 (N.D.N.Y. Nov. 12, 2008) ("[A]ny employees of a party, despite their geographic location, can reasonably be expected to testify as witnesses at trial and their availability is not a consideration here"); Fuji Photo Film, 415 F. Supp. 2d at 375 ("[P]arties can compel the testimony of their own employees without the need for subpoena . . ."). Therefore, of the seven witnesses identified by Vutec, only Nguyn, a former Vutec employee and resident of Southern Florida, may be considered a non-party witness for the purposes of a § 1404(a) transfer.

Farralane has stated that is does not expect to offer the testimony of anyone other than its president, who regularly visits southern Florida on personal and Farralane business.

On the other hand, the Plaintiffs have identified two non-party witnesses, Richard Katz and Joseph Lerch, who are both subject to the subpoena power of this Court and not subject to the jurisdiction of Florida's Southern District. The Plaintiffs assert that if this case were transferred to the Southern District of Florida, they would be unable to compel these two non-party witnesses. In response, Vutec argues that keeping this case in Eastern District of New York prevents it from compelling the testimony of its employee and non-employee witnesses, who reside in Southern Florida. Though the Court has established that Vutec may compel the attendance of its employee witnesses, Vutec would not be able to compel the attendance of its former engineer, Nguyn.

Neither party to this action has provided affidavits stating that their prospective non-party witness(es) would not appear if the action were or were not transferred. Therefore, neither party has offered anything more than speculation that their non-party witnesses, Mr. Katz and Mr. Lerch for Plaintiffs, and Mr. Nguyn for Defendant, would be unwilling to travel for trial. See In re Hanger Orthopedic Group, Inc. Sec. Litig., 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006). Given that "[t]he parties always have 'the option of videotaping testimony of witnesses unwilling to

travel'", id. at 169–70 (citing Dealtime.com v. McNulty, 123 F. Supp. 2d 750, 757 (S.D.N.Y. 2000)), this factor is largely neutral. At most, it weighs slightly against transfer.

### f. The Weight Accorded to the Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer." Neil Bros. Ltd., 425 F. Supp. 2d at 333; Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 187 (E.D.N.Y. 2003); see also Iragorri v. United Techs. Corp., 274 F.3d 65, 70–71 (2d Cir. 2001) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)); Piper Aircraft v. Reyno, 454 U.S. 235, 255, 102 S. Ct. 252, 265–66, 70 L. Ed. 2d 419 (1981); Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 980 (2d Cir. 1993); Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950). Vutec's argument that Plaintiff's choice of forum is due less weight because not all residents reside in this forum is unpersuasive. See generally Zaitsev v. State Farm Fire & Cas. Co., No. 05-CV-2098, 2005 WL 3088326, at *3 (E.D.N.Y. Nov. 17, 2005) ("[W]hen the plaintiff is not a resident of the chosen forum, its preference is due less weight."). Here, two of the three plaintiffs, who are the patent-holders, are residents of New York. More importantly, only one factor thus far weighs in favor of transfer.

Accordingly, the Court finds that the Defendants have not demonstrated that other factors outweigh the Plaintiffs' interest in selecting a forum.

### g. Calendar Congestion

"Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded come weight." Neil Bros. Ltd., 425 F. Supp. 2d at 334 (quoting Miller v. Bombardier, Inc., No. 93 Civ. 376, 1993 WL

378585, at *5 (S.D.N.Y. Sept. 23, 1993)). Vutec has presented evidence from the September

2011 Judicial Caseload Profile published by the Administrative Office of U.S. Courts that

demonstrates the relative calendar congestion in both the Eastern District of New York and the

Southern District of Florida. This report shows that the Southern District of Florida ranks "as the

second shortest time period for any district in the country . . . . Similarly, the September 2011

Judicial Caseload Profile states that the average time from the filing of a case until the

conclusion of a trial in the Southern District of Florida is 17.2 months; whereas, in the Eastern

District of New York it is 32.9 months." Def.'s Br., at 59. Thus, the Court finds that this factor

weighs in favor of transfer.

### h. Desirability of Having the Case Tried by the Forum Familiar with the Substantive Law to be Applied

"[B]ecause patent law is federal law, any district court may handle a patent case with

equal skill." Bionx Implants, Inc., No. 99 Civ. 740, 1999 WL 342306, at *5; Farrior v. George

Weston Bakeries Distribution, Inc., No. 08 Civ. 2705, 2009 WL 113774, at *8 n.6 (E.D.N.Y.

Jan. 15, 2009); Neil Bros., 425 F. Supp. 2d at 333; Wechsler v. Macke Inter. Trade, Inc., No. 99

Civ. 5725, 1999 WL 1261251, at *9 (S.D.N.Y. Dec. 27, 1999). The parties agree that neither the

Eastern District of New York nor the Southern District of Florida is more or less familiar with

the governing law. Therefore, this factor is neutral in this 1404(a) analysis.

### i. Trial Efficiency and How Best to Serve the Interest of Justice, Based on an Assessment of the Totality of Material Circumstances

Finally, the interests of justice and trial efficiency do not weigh heavily in favor of or

against transfer. The complaint was filed almost one year ago, yet only minimal discovery has

taken place. There has not yet been a significant investment by the Eastern District of New York

in this case in terms of either time or work. See Walker v. Jon Renau Collection, Inc., 423 F.

Supp. 2d 115, 119 (S.D.N.Y. 2005) (citing Invivo Research, Inc. v. Magnetic Resonance Equip.

Corp., 119 F. Supp. 2d 433, 439 (S.D.N.Y. 2000)).  Thus, the Court would not be hesitant to

transfer the case to Florida at this early stage of the litigation.

On the other hand, while it is persuasive that the locus of operative facts as to the

infringing product lies in Florida and that there is less calendar congestion in that district, the

Court finds these two factors insufficient to disturb the Plaintiffs' choice of forum.  As stated

above, the Plaintiffs have limited relative means in comparison to the Defendant Vutec; the

attendance of almost all of the Defendants' witnesses can be compelled by process; and the

nature and quality of testimony to be given by Plaintiffs' witnesses weighs against transfer.  "The

burden of demonstrating the desirability of transfer lies with the moving party, and the burden is

a heavy one.  The defendants have failed to make a clear-cut showing that transfer is in the best

interests of the litigation.  The defendants have not demonstrated that the factors in this, taken

together, dictate that the adjudication of this action should occur in the [Southern District of

Florida].  Accordingly, this Court finds that the defendant's motion to transfer to the [Southern

District of Florida] should be denied." Miller v. Bombardier Inc., No. 93 Civ. 0376, 1993 WL

378585, at *6 (S.D.N.Y. Sept. 23, 1993).  The motions by the Defendants Vutec and Farralane,

pursuant to 28 U.S.C. 1404(a), to transfer this case to the District Court for the Southern District

of Florida are denied.

**B.  As to the Defendants' Motion to Dismiss for Failure to State a Claim**

Because the Court has determined that the action should not be transferred to the

Southern District of Florida, it is necessary to assess the pending motion to dismiss for failure to

state a claim pursuant to Rule 12(b)(6).

### 1. Legal Standard

Under the now well-established <u>Twombly</u> standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after <u>Twombly</u>, the Court's inquiry under Rule 12(b)(6) is guided by two principles. <u>Harris v. Mills</u>, 572 F.3d 66 (2d Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. <u>Zinermon v. Burch</u>, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); <u>In re NYSE Specialists Secs. Litig.</u>, 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b)(6). <u>Hertz Corp. v. City of New York</u>, 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp.,
275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683,
40 L. Ed. 2d 90 (1974)).

Although the Twombly standard applies to "all civil actions," Ashcroft v. Iqbal, 556 U.S.
662, 684, 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009), its applicability to patent cases,
particularly those involving claims of direct infringement, is an issue that has divided the courts."
Gradient Ents., Inc. v. Skype Technologies S.A., 848 F. Supp. 2d 404, 407 (W.D.N.Y. 2012). It
appears that some of this confusion steams from Form 18, which is a part of the Appendix of the
Federal Rules of Civil Procedure. This form is titled "Complaint for Patent Infringement", and
includes a template for a litigant to assert a claim of direct patent infringement. "That form
requires only: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent;
(3) a statement that the defendant has been infringing the patent by making, selling, and using the
device embodying the patent; (4) a statement that the plaintiff has given the defendant notice of
its infringement; and (5) a demand for an injunction and damages." Id. Moreover, Rule 84
provides that "[t]he forms in the Appendix suffice under these rules and illustrate the simplicity
and brevity that these rules contemplate," and that "the practitioner using them may rely on them
to that extent." This confusion "has led to differing conclusions among the lower courts about
whether a complaint that complies with the minimum requirements of Form 18 suffices to state a
claim for direct patent infringement." See Vaughan Co. v. Global Bio-Fuels Tech., LLC, No. 12
Civ. 1292, 2012 WL 5598501, at *2 (N.D.N.Y. Nov. 15, 2012) ("Courts are divided as to
whether allegations of direct patent infringement need only mirror those contained in Form 18 of
the Federal Rules of Civil Procedure FN3 or the more strict pleading requirements of Iqbal.");
Jeremiah J. McCarthy and Matthew D. Yusick, Twombly and Iqbal: Has the Court "Messed Up

the Federal Rules"?, 2010 Fed. Cts. L. Rev. 1, 6 (2010) (noting the Form 18 calls for conclusory pleading of patent infringement despite Twombly/Iqbal).

A number of courts have held that absent a clear repudiation of Form 18 by the Supreme Court, the Federal Circuit, or the applicable regional circuit, see Juniper Networks, Inc. v. Shipley, 643 F.3d 1346, 1350 (Fed. Cir. 2011) ("This court reviews dismissal for failure to state a claim upon which relief can be granted under the law of the regional circuit") (citing McZeal, 501 F.3d at 1355–56), "a complaint that conforms to Form 18 suffices to state a claim for direct patent infringement." Gradient, 848 F. Supp. 2d at 407. "Other courts, however, have held that because the Twombly/Iqbal pleading standard applies to all civil cases, a patent infringement complaint must do more than simply assert the bare elements of a claim, and that a Form 18–style complaint will not suffice, in the aftermath of Twombly and Iqbal." Id.; see Medsquire LLC v. Spring Medical Systems Inc., No. 11 Civ. 4504, 2011 WL 4101093, at *2 (C.D. Cal. Aug. 31, 2011). Regardless, as the allegations of direct infringement have not been contested by the Defendants, the Court need not resolve this inquiry. In any event, the Federal Circuit has recently noted that "whether [a complaint] adequately plead[s] direct infringement is to be measured by the specificity required by Form 18." In re Bill of Lading Transmission and Processing Sys. Patent Litig., 681 F.3d 1323, 1333 (Fed. Cir. 2012).

The Defendants take issue with three specific aspects of the Plaintiffs' complaint: (1) the claim of induced infringement; (2) the claim of contributory infringement; and (3) the claim of willful infringement and corresponding request for treble damages.

With regard to causes of action for indirect infringement, it has been held that the Forms are irrelevant, and that "Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement." Id. at 1336; E.g., Tech.

Licensing Corp. v. Technicolor USA, Inc., 03 Civ. 1329, 2010 WL 4070208, at *2 (E.D. Cal. Oct. 18, 2010) ("No adequate justification exists for holding indirect infringement claims, which contain additional elements not found in direct infringement claims, to the standard of . . . Form 18.  Thus, the general principles of Twombly and Iqbal must be applied to indirect infringement claims.").  Thus, this Court will look to relevant precedent for guidance regarding the pleading requirements for claims of indirect infringement.

## 2.  Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  Liability under § 271(b) "requires knowledge that the induced acts constitute patent infringement."  Global–Tech Appliances, Inc. v. SEB S.A., —— U.S. ——, 131 S. Ct. 2060, 2068, 179 L. Ed. 2d 1167 (2011).  To state a claim for induced infringement pursuant to 35 U.S.C. § 271(b), the patentee must plead facts showing, first, that "there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  EON Corp. IP Holdings LLC v. FLO TV Inc., 802 F. Supp. 2d 527, 533 (D. Del. 2011) (citations omitted).  See, e.g., Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1273 (Fed. Cir. 2004) (stating that in order to prevail on an indirect infringement claim, a plaintiff must first demonstrate direct infringement, then establish that the "defendant possessed the requisite knowledge or intent to be held vicariously liable.").  "The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent."  DSU Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc).

Here, the Plaintiffs have only alleged induced infringement against the Defendant Vutec, and have alleged that Vutec "has been . . . inducing infringement" and that Vutec had knowledge of the Plaintiffs' patent rights.  (Compl., at ¶¶ 20, 22)  Thus, the pleading satisfies the requirement of knowledge.  Cf. Mallinckrodt, 670 F. Supp. 2d at 354 ("Plaintiffs' Complaint does not specifically allege that Defendants had knowledge of the '434 Patent at the time they were committing the allegedly infringing activities set forth in Paragraph 11.  Nor does Paragraph 11 contain sufficient facts on which the Court can reasonably infer an allegation that Defendants possessed such knowledge.").

However, the Plaintiffs fail to plausibly plead either that Vutec knowingly induced the infringement or that Vutec possessed the specific intent to encourage Farralane's infringement.  See DSU Med. Corp., 471 F.3d at 1304 (pleading induced infringement requires "that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.); Mallinckrodt, Inc. v. E-Z-Em Inc., 670 F. Supp. 2d 349, 354 (D. Del. 2009) ("Further, Plaintiffs do not specifically allege any intent to induce infringement.  Even when viewed in the light most favorable to Plaintiffs, the Complaint does not plead sufficient facts to permit a reasonable inference that Defendants' actions explicitly or implicitly induced anyone to use the allegedly infringing device.").

Certainly, the complaint alleges that Vutec had knowledge of the '765 Patent.  See In re Bill of Lading Transmission and Processing Sys. Patent Litig., 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("Because liability for indirect infringement of a patent requires direct infringement, R+L's amended complaints must plausibly allege that the '078 patent was directly infringed to survive Appellees' motion to dismiss.").  However, knowledge alone is insufficient.  Rather, the complaint "must contain facts plausibly showing that Appellees specifically intended their

customers to infringe the '078 patent and knew that the customer's acts constituted infringement."  Id.  There are no such allegations here.  Cf. Automated Transactions, 2010 WL 5819060, at *6 (plaintiff's "allegations that [defendant] 'provides [its] customers . . . with detailed explanations, instructions and information as to arrangements, applications and uses of [plaintiff's products] that promote and demonstrate how to use these [products] in an infringing manner' certainly supports a reasonable inference that it induced the customers to use the allegedly infringing devices").

The Plaintiffs contend that "the Complaint charges Vutec with supplying infringing products for sale in the District . . . [and that t]his makes out the charge of inducing infringement."  However, as set forth above, the complaint does not plead facts showing that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.  Therefore, this Court agrees that the Plaintiffs have failed to state a claim against Vutec for induced infringement.  The motions to dismiss this particular cause of action are granted in that regard.

As a final point, Vutec and Farralane also deny that Vutec ever sold any products to Farralane that could be considered to be video display covers.  However, factual determinations are not appropriate at this stage of the litigation.  See Mallinckordt, Inc. v. E-Z Em. Inc., 670 F. Supp. 2d 349, 354 (D. Del. 2009).  Thus, the Court will not consider this assertion at this juncture.

### 3.  Contributory Infringement

Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing the invention; has no substantial non-infringing uses; and is known by the party "to be especially

made or especially adapted for use in an infringement of such patent."  35 U.S.C. § 271(c).

Accordingly, a plaintiff asserting a claim under a theory of contributory infringement under 35

U.S.C. § 27(c) must allege facts plausibly showing that: (1) there is direct infringement; (2) the

alleged infringer had knowledge of the patent; (3) the component, material, or apparatus has no

substantial noninfringing uses; and (4) the component, material, or apparatus is a material part of

the invention.  Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010) (citing 35

U.S.C. § 271(c)); see Global-Tech Appliances Inc. v. SEB S.A., __ U.S. __, 131 S. Ct. 2060,

2068, 179 L. Ed. 2d 1167 (2011) ("we now hold that induced infringement under § 271(b)

requires knowledge that the induced acts constitute patent infringement.").

Thus, liability for contributory infringement requires "a showing that the alleged

contributory infringer knew that the combination for which his component was especially

designed was both patented and infringing."  Aro Mfg. Co. v. Convertible Top Replacement Co.,

377 U.S. 476, 488, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964).  With regard to the third prong, a

substantial non-infringing use is any use that is "not unusual, far-fetched, illusory, impractical,

occasional, aberrant, or experimental."  Vita–Mix Corp. v. Basic Holdings, Inc., 581 F.3d 1317,

1327–29 (Fed. Cir. 2009).  "For purposes of contributory infringement, the inquiry focuses on

whether the accused products can be used for purposes *other than* infringement."  In re Bill of

Lading, 681 F.3d at 1338.

Here, the Plaintiffs have alleged that Farralane has offered for sale and sold allegedly

infringing products supplied by Vutec.  Therefore, there are allegations concerning the requisite

direct infringement.  See R & R Recreation Products Inc. v. Joan Cook Inc., 25 U.S.P.Q.2d

(BNA) 1781, 1784 (S.D.N.Y. Apr.14, 1992) ("'[W]ithout the fact or intention of a' direct

infringement there is no cause of action for contributory [copyright] infringement." (quoting

Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 526, 92 S. Ct. 1700, 32 L. Ed. 2d 273 (1972))).  Moreover, there are allegations regarding knowledge of the patent.

However, the complaint is devoid of any other allegations that are necessary to plausibly state a claim for contributory infringement.  In particular, the complaint does not identify any component, material or apparatus that is a material part of the invention.

The Plaintiffs argue that claims 21–24 of the '765 patent call for a combination of the screen and a television, and that the complaint charges Vutec with selling the screen to Farralane, and the screen is thus a "component".  Accordingly, the Plaintiffs assert that Farralane sells the screens in combination with televisions.  However, even if the Court were to construe these statements as alleging that the screen is a component, material, or apparatus that is a material part of the invention, the complaint certainly does not allege that the screen has no substantial noninfringing uses.  See In re Bill of Lading Transmission, 681 F.3d at 1337 ("To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.").

Therefore, the Defendants' motion to dismiss the claim for contributory infringement is granted.

### 4.  Willful Infringement

"[T]here is a lack of complete uniformity in recent district court authority addressing willful infringement claims in light of Twombly and Iqbal."  Sony Corp. v. LG Electronics U.S.A., Inc., 768 F. Supp. 2d 1058, 1064 (C.D. Cal. 2011).  Yet, "courts have generally required a complaint to allege facts that, at a minimum, show direct infringement, i.e., that identify the patent in suit, and show the defendant's actual knowledge of the existence of the patent."

Gradient, 848 F. Supp. 2d at 409. See, e.g., Investpic, LLC v. FactSet Research Sys., Inc., No. 10 Civ. 1028, 2011 WL 4591078, at *2 (D. Del. Sept. 30, 2011) (plaintiff's allegation "that the defendants knew of the '291 patent, because the '291 patent 'is well-known in the industry– having been cited by at least 79 issued U.S. patents since 2001,'" was sufficient to support claim of willful infringement); Oracle Corp. v. DrugLogic, Inc., 807 F. Supp. 2d 885, 902 (N.D. Cal. 2011) (plaintiff "state[d] sufficient facts to support a claim for willful infringement of the '091 patent . . . [b]y alleging that Oracle was aware of the '091 patent and had 'actual notice' of DrugLogic's infringement claims").

According to Vutec, at the pleading stage, a plaintiff must allege facts forming the basis of a good faith belief that its claim of willful infringement has evidentiary support, citing In re Segate Tech., LLC, 497 F.3d 1360, 1374 (Fed. Cir. 2007) ("when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. Fed. R. Civ. Pro. 8, 11(b)."). However, the Defendant Vutec does not cite any case for the proposition that this good faith belief must be contained in specific factual allegations in the complaint. Rather, all of the cases that this Court has reviewed appear to only require allegations of direct infringement and actual knowledge of the existence of the patent. While ultimately a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, this is an evidentiary burden, not a pleading standard. Here, the Plaintiffs have alleged both that there was direct infringement and that there was knowledge of the patent. Thus, the motion to dismiss the claim for willful infringement as against Vutec is denied.

### 5. The Plaintiffs' Contentions

The Plaintiffs contend that its claims for indirect infringement and willful infringement are alternative theories of relief. Thus, they argue that so long as they have adequately pled one theory of liability—direct infringement—their one-count patent infringement that also includes contributory infringement, inducing infringement, and willful infringement, cannot be dismissed. In particular, the Plaintiffs rely upon Rule 8(d)(2), which states that a party may include two or more alternative claims in a single count, and "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." See New Yuen Fat Garments Factory Ltd. v. August Silk, Inc., No. 07 Civ. 8304, 2009 WL 1515696, at *6 (S.D.N.Y. June 1, 2009) (concluding that the proposed claim was not futile because an alternative statement of the claim was sufficient to withstand a motion to dismiss, rendering the entire claim sufficient). In response, the Defendant Vutec categorizes it as a "hybrid claim" for infringement, rather than one claim asserting three alternative theories.

Even if the Court construes these three claims as alternative theories for relief, the Plaintiffs misread Rule 8(d)(2). The notion that a pleading will not be dismissed if at least one of the alternative theories of relief is adequately pled, does not preclude the alternative claims from being dismissed if they do not state a cause of action. See Taylerson v. Am. Airlines, Inc., 183 F. Supp. 882, 884 (S.D.N.Y. 1960) ("A *complaint* which contains alternative statements of the claim, some of which are insufficient, will not be dismissed if any one alternative statement supports the claim.") (emphasis added). If that were the case, then any plaintiff could avoid ever having to adequately plead the necessary elements of a claim by simply including it as an alternative theory for relief under one cause of action. Such a result would obviously be illogical. Rather, the purpose of Rule 8(d)(2) is to permit a plaintiff to plead contradictory claims

and allow wide latitude in framing the right to recover. See Adler v. Pataki, 185 F.3d 35, 41 (2d Cir. 1999) (holding that even where allegations are not specifically denominated as alternative claims "[Rule 8(d)] offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing orders granting motions to dismiss."); St. John's Univ., N.Y. v. Bolton, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) ("Rule 8(d), formerly Rule 8(e), embodies a liberal approach to pleading which favors the resolution of cases on the merits of the plaintiff's claims. . . . Rule 8(d) ameliorates the uncertainty inherent in all litigation at the pleading stage by permitting plaintiffs to allege claims in the alternative, even if the legal theories underlying those claims are technically inconsistent or contradictory.").

Therefore, while the Plaintiffs need not make a pretrial election between the theories of direct infringement, inducing infringement, and contributory infringement, they still must adequately plead them each independently. "To be sure, litigants have substantial leeway under Rule 8(e) to plead alternative, and even inconsistent, claims. . . . However, each alternative theory must itself be sufficient to state a claim, and '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Kwan v. Schlein, 246 F.R.D. 447, 452 (S.D.N.Y. 2007) (quoting Twombly, 127 S. Ct. at 1965) (dismissing plaintiff's second alternative claim because plaintiff failed to allege any facts supporting the alternative claim). Thus, the Plaintiffs' arguments in opposition to the present motion to dismiss are without merit.

Conversely, the Defendants allude to the idea in their motion papers that because the direct infringement claim is included as part of a single combined claim, that the complaint fails to allege any claim upon which relief can be granted. However, as long as the requisite pleading elements are met for direct infringement, the fact that there is a single cause of action is

irrelevant.  See TVT Records v. Island Def Jam Music Group, 250 F. Supp. 2d 341, 348 (S.D.N.Y. 2003) (finding that the complaint adequately expressed and notified the defendant of the plaintiff's allegations and claims for redress as required by Rule 8, in spite of the absence of the specific language, "in the alternative.").

As a final matter, the Plaintiffs have requested that this Court consider entering a proposed amended complaint that they have included as an exhibit to their opposition, in lieu of dismissal with leave to refile.  However, as the Defendants have not yet had an opportunity to address the allegations contained in the Plaintiffs' proposed amended complaint, the Court will not rule on its merits.  Instead, the induced infringement and contributory infringement claims are dismissed without prejudice, and the Plaintiffs may file an amended complaint within 20 days of the date of this Order.  See Wade v. Rosenthal, Stein & Assocs., LLC, No. 11 Civ. 5672, 2012 WL 3764291, at *5 (E.D.N.Y. Aug. 29, 2012) ("Ordinarily, a plaintiff is granted at least one opportunity to replead claims if a defect in the claim can be cured.").

### III.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendants' motion to transfer venue is denied; and it is further

**ORDERED**, that the Defendants' motion to dismiss is granted in part and denied in part; and it is further

**ORDERED**, that the Plaintiff may file an amended complaint in a manner consistent with this decision.  Any Amended Complaint shall be served and filed within 20 calendar days from the date of this Memorandum Order.

**SO ORDERED.**

Dated: Central Islip, New York
       November 30, 2012

_____ */s/ Arthur D. Spatt* _____
ARTHUR D. SPATT
United States District Judge