UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

PHILIP A. PECORINO, ALDO MEDAGLIA,
and SHEWARD & SONS, d/b/a VISIONART,

                Plaintiffs,

                           **MEMORANDUM & ORDER**
          v.                   11-CV-6312 (PKC)

VUTEC CORPORATION and FARRALANE
LIGHTING AUDIO AND VIDEO SYSTEMS, INC.,

                Defendants.

----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Pending before the Court in this patent infringement action is Defendants' motion for summary judgment based on the equitable defense of laches. (Dkt. 94.) For the reasons set forth below, Defendants' motion is denied in its entirety.

## *BACKGROUND*

The procedural history of this and related litigation largely is not in dispute. On November 23, 1993, the U.S. Patent and Trademark Office ("PTO") issued Plaintiffs Pecorino and Medaglia patent number 5,264,765 ("765 Patent") for a "video display screen cover." (Dkt. 52-1.) Pecorino and Medaglia in 2005 entered into a licensing agreement with Plaintiff Visionart, under which Visionart was granted an exclusive license to the 765 Patent. (Dkt. 1 ¶ 11). As early as July 1, 2005, Plaintiffs became aware of the potentially infringing activities of Vutec. (Dkt. 52 ¶ 12.)[1] On May 15, 2007 Plaintiffs commenced a lawsuit against Defendant

---

[1] The parties suggest that August 2005 is the earliest Plaintiffs knew or should have known of the potentially infringing activity. (*See* Dkt. 93 at 8.) However, on July 1, 2005, Plaintiffs initiated negotiations for a license with Defendants. (*See* Dkt. 89, Plaintiff's Local Civil Rule 56.1

Vutec Corporation and others alleging infringement of the 765 Patent. *See Pecorino, et al. v. Audio Command Sys., Inc., et al.*, 07-CV-1997(LDW) Dkt. 1 (E.D.N.Y. May 15, 2007) (the "2007 Litigation"). In defense of that lawsuit, Defendants claimed that another patent and other "prior art" rendered the 765 Patent invalid and that, therefore, Defendants had not infringed upon it. (Defendant St. ¶¶ 5–6.)

On November 14, 2007, Plaintiffs voluntarily dismissed without prejudice the 2007 Litigation to pursue a reexamination of the 765 Patent before the PTO. *See* 07-CV-1997 Dkt. 11 (E.D.N.Y. Nov. 5, 2007) (notice of dismissal). Specifically, Plaintiffs sought reexamination to determine the validity of the 765 Patent in light of the prior art and other defenses asserted by Defendants. (*See* Dkt. 90-3.) In Plaintiffs' letter notifying Defendants of the voluntary dismissal, Plaintiffs informed Defendants' counsel that "[u]nless and until we have the patent certified by the Patent Office as having claims that overcome the Luckie patent and other prior art, we will not initiate an infringement suit against Vutec or its distributors." (Dkt. 90-3 at 1.)

On January 12, 2010, the PTO confirmed the patentability of the 765 Patent. (Dkt. 1 ¶ 14.) Plaintiffs commenced this suit on December 27, 2011. (Dkt. 1.)

*LEGAL STANDARD*

I. <u>Summary Judgment</u>

"The standard for summary judgment in a patent case is the same as in any other case." *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 208 (E.D.N.Y. 2009) (citing *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed Cir. 1998)). Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

---

Statement ("Plaintiff St.") at ¶ 15.) Therefore, the Court, for purposes of this motion, deems July 1, 2005 as the date on which Plaintiffs knew of the potentially infringing activity.

Civ. Proc. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Department*, 613 F.3d 336, 340 (2d Cir. 2010); *see Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011); *see also F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005). The nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Jeffreys*, 426 F.3d at 554 (quotations and citations omitted); *see also DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010); and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty., New York*, 541 F.3d 464, 471 (2d Cir. 2008). In determining whether a genuine

issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

II.   Laches

Because laches is an affirmative defense, a defendant asserting laches bears the ultimate burden of persuasion, even where a presumption of laches may apply. *A.C. Aukerman Co. v. R.I. Chaides Constr. Co.*, 960 F.2d 1020, 1038 (Fed. Cir. 1992). Whether to apply the equitable remedy of laches lies in the sound discretion of the court. *King v. Innovation Books, A Div. of Innovative Corp.*, 976 F.2d 824 (2d Cir. 1992); *Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352, 1358 (Fed. Cir. 2008). "The equitable nature of laches necessarily requires that the resolution be based on the circumstances peculiar to each case. . . . The inquiry is a factual one", *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994), and thus laches is not always amenable to determination on summary judgment. Moreover, "the establishment of the factors of undue delay and prejudice, whether by actual proof or by the presumption, does not *mandate* recognition of a laches defense in every case. Laches remains an equitable judgment of the trial court in light of all the circumstances." *A.C. Aukerman Co.*, 960 F.2d at 1036.

Laches is established where (1) "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and (2) the delay operated to the prejudice or injury of the defendant." *A.C. Aukerman Co.*, 960 F.2d at 1032 (citing *Costello v. United States*, 365 U.S. 265, 282 (1961)). Importantly, even though the defense of laches may bar "the patentee's claim

for damages prior to suit", the entire action need not be dismissed, and any claims of damages subsequent to the filing of the suit and claims for injunctive relief are still permitted. *Id.*

*DISCUSSION*

I. <u>Presumption of Laches</u>

A presumption of laches applies in a patent infringement action where a plaintiff delays in bringing suit six or more years after the plaintiff knew or reasonably should have known of the alleged infringing activity. *A.C. Aukerman Co.*, 960 F.2d at 1032; *Bott v. Four Star Corp.*, 807 F.2d 1567, 1576 (Fed. Cir. 1986). The effect of a presumption of laches is that the burden of providing evidence to defeat laches shifts to the plaintiff, although the ultimate burden of persuasion remains with the defendant. *Id.* at 1032.

Here, Defendants argue that Plaintiffs delayed more than six years from when they learned of the potential infringement before bringing suit, and that a presumption of laches therefore applies. (Dkt. 93 at 1–3.) At the core of Defendants' argument is the claim that Plaintiffs' 2007 Litigation should not be considered in calculating the six-year time period for the presumption of laches because Plaintiffs voluntarily dismissed the action, without prejudice, which, according to Defendants, is the *legal* equivalent of having never been brought. (Dkt. 93 at 10.) This is incorrect. Defendants' characterization of Plaintiffs' withdrawal of the 2007 Litigation is instructive. First, Defendants state that "[i]t is well-settled and beyond serious debate that Pecorino's <u>unilateral</u> dismissal of its patent infringement action brought in 2007 against Vutec is *legally tantamount* to having <u>never</u> brought suit against Vutec prior to the commencement of this action on December 27, 2011." (Dkt. 93 at 9) (italicized emphasis added). Next, Defendants cite the Sixth Circuit case *Rice v. Jefferson Pilot Financial Insurance Company* for the proposition that "[i]t is generally accepted that a dismissal without prejudice

5

leaves the situation the same as if the suit had never been brought, and that in absence of a statute to the contrary, a party cannot deduct from *the period of the statute of limitations* the time during which the action so dismissed was pending." 576 F.3d 450, 457 (6th Cir. 2009) (emphasis added). Defendants further contend that "Pecorino cannot *legally* rely upon the prior litigation brought against Vutec in 2007 as any sort of justification or 'excuse' for now barring the application of laches against Pecorino." (Dkt. 93 at 10) (italicized emphasis added).

Regardless of whether Defendants' use of the term "legal" was intentional or merely used in the general sense, Defendants fail to recognize the critical distinction between the legal bar of the statute of limitations and the equitable bar of laches, and the respective application of a "without prejudice" dismissal to each. Defendants argue that the *legal* effect of the voluntary dismissal should apply to the *equitable* remedy of laches, and that the Court is compelled to treat the 2007 Litigation as though it never occurred. Defendants cite cases in which courts held that a "without prejudice" dismissal equated to a "with prejudice" dismissal where the second action was commenced after the *statute of limitations* had expired. (Dkt. 93 at 9–10.) All of Defendants' cases cited for the point that a "without prejudice" dismissal has the effect of a legal nullity involve the legal defense of statute of limitations, not the equitable defense of laches. Defendants cite no case in which a prior voluntary dismissal of a lawsuit was deemed a nullity for purposes of a laches calculation. Indeed, not once in any of the cases cited by Defendant on this point does the term laches even appear.

The legal effect of the voluntary dismissal of the 2007 Litigation is not applicable to the equitable remedy of laches. *See, e.g.*, *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules; it depends on flexibility."); *see also Brennan v. Nassau Cnty.*, 352 F.3d 60, 63 (2d Cir. 2003) (finding that "the district court erred by applying a statute

6

of limitations analysis to [appellant's] equitable claims" and finding that appellant's claims were "subject only to equitable defenses such as laches, not to legal defenses such as the statute of limitations"). Therefore, the Court rejects Defendants' invocation of the *legal* effect of the voluntary dismissal of the 2007 Litigation in determining whether a presumption of laches applies.

The main purpose of the doctrine of laches is to prevent unfair "sandbagging" by plaintiffs in order to gain an unfair litigation advantage or to otherwise prejudice defendants by delaying suit even though they are aware of possible infringement. *See, e.g.*, *Vaupel KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876–77 (Fed. Cir. 1991) ("A finding of laches can occur when an accused infringer shows unreasonable and unexcused delay in filing suit and material prejudice or injury as a result of the delay"). The key factor for laches is whether the defendant had reason to believe it would be sued. *Id.* at 876.

It is undisputed that Plaintiffs became aware of the possible infringement in July 2005 and sued Defendants for infringement of the 765 Patent in May 2007. After several months, and in response to the prior art and other defenses asserted by Defendants, Plaintiffs voluntarily dismissed the action, and informed Defendants that any subsequent infringement litigation with respect to the 765 Patent was contingent upon the outcome of the reexamination proceedings before the PTO. (*See* Dkt. 90-3) ("Unless and until we have the patent certified by the [PTO] as having claims that overcome the Luckie patent and other prior art, we will not initiate an infringement suit against Vutec or its distributors."). Therefore, far from being "sandbagged" or unfairly surprised by Plaintiffs' infringement allegations in this action, Defendants were made aware of the possible infringement at multiple points in time: as early as July 2005, when Plaintiffs offered to negotiate a license; in May 2007, when Defendants were sued over the 765

7

Patent; and in November 5, 2007, when Plaintiffs advised Defendants of the voluntary dismissal of the lawsuit and Plaintiffs' intent to re-initiate suit if the reexamination proceedings certified the validity of the 765 Patent.

Defendants object to Plaintiffs' failure to seek a stay of the 2007 Litigation rather than voluntarily dismiss the action as they did. (*See* Dkt. 93 at 10–12.) Plaintiffs' chosen course of action, which was not improper, is of no moment to the Court's consideration of laches. Defendants cry foul over being "dragged" through court only to have Pecorino "cut and run" by voluntarily dismissing the earlier action. (Dkt. 93 at 5, 10.) This complaint overlooks the fact that the 2007 Litigation was dismissed before Defendants even filed an answer. The docket in the 2007 Litigation reveals that counsel for Defendant Vutec made two submissions to the court in that action—one requesting an extension of time to answer the complaint and the other seeking a premotion conference with respect to a proposed motion to dismiss. *See Pecorino*, 07-CV-1997, Dkts. 5, 9 (E.D.N.Y. Oct. 2 & 31, 2007). Although Defendant Vutec expended resources in defending that action, that litigation was in no way was protracted or resource intensive. And there is no evidence that the 2007 Litigation was brought in bad faith or for any other reason other than that Plaintiffs, made aware of the possibly infringing activity, promptly brought the lawsuit to pursue their rights. Nor is there any evidence that Plaintiffs dismissed the 2007 Litigation for any reason other than to pursue a reexamination of its patent from the PTO, which they had a right to do. Had the reexamination gone against them, Plaintiffs advised Defendants that they would no longer pursue a claim of infringement. There is no relevant difference from the course of action chosen by Plaintiffs, *i.e.*, to dismiss that action, and Defendants' preferred action, *i.e.*, to stay the case. Finally, Defendants make no credible claim of prejudice arising from Plaintiffs not seeking a stay, given that they had notice of the dismissal,

8

the reason for it, and the possible re-filing of the action following recertification. Defendants are in the same position now as they would have been had Plaintiffs sought to stay the 2007 Lawsuit and lifted it after the patent was confirmed.

In sum, the presumption of laches does not apply in this case. The 2007 Litigation is not a nullity for purposes of laches. Plaintiffs therefore did not delay six years in filing suit. Rather, they brought suit in May 2007, approximately two years after learning of the potentially infringing activity. Although Plaintiffs later dismissed the 2007 Litigation, it did so in order to initiate a reexamination proceeding before the PTO, the express purpose of which was to determine whether continued litigation was warranted. In fact, after the patent was recertified in January 2010, Plaintiffs resumed litigation by filing this action in December 2011. Thus, throughout the relevant six-and-a-half-year period, Defendants were repeatedly and near-continuously on notice of the potential for a lawsuit. Applying a presumption of laches under these circumstances would be patently inappropriate.

## II. Whether the Delay was Unreasonable or Inexcusable

Even were a presumption of laches to apply here, which it does not, Plaintiffs' purported delay in bringing suit would not be unreasonable or inexcusable. Where a presumption of laches applies, a plaintiff may rebut the presumption by presenting "evidence to show an excuse for the delay or that the delay was reasonable" or by offering evidence "sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue." *A.C. Aukerman Co.*, 960 F.2d at 1038. "The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *Id.* at 1032. Plaintiffs could rebut the presumption of laches with evidence that it was engaged in "other litigation," such as the 2007 Litigation or the reexamination proceedings with the PTO, *see Serdarevic*, 532 F.3d at 1359; *A.C. Aukerman Co.*,

9

960 F.2d at 1033; *Jamesbury*, 839 F.2d at 1552–53), or that they were involved in negotiations with the accused infringer, *A.C. Aukerman Co.*, 960 F.2d at 1033 (citing *Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1013–14 (7th Cir. 1970)).

The purpose of laches is to ensure that plaintiffs do not "sleep on their rights" and delay bringing suit to the unfair prejudice of defendants. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1272 (Fed. Cir. 1999) ("Laches is firmly rooted in the equitable principle that courts 'will not assist one who has slept on his rights.'") (citing *Lane & Bodley Co. v. Locke*, 150 U.S. 193, 201 (1893)). Again, the essence of laches is to prevent "sandbagging" in which plaintiffs unfairly delay litigation in order to gain some tactical or other advantage with respect to the litigation. *See, e.g.*, *Webster Elec. Co. v. Splitdorf Elec. Co.*, 264 U.S. 463 (1924) (invoking laches where patentee "stood by and awaited developments" for eight years); *Woodbridge v. United States*, 263 U.S. 50 (1923) (applying laches where inventor waited nine years in order to maximize profits).

"In the simplest or purest form of laches, there need be no direct contact between the plaintiff and the defendant from the time the plaintiff becomes aware of its claim until the suit." *A.C. Aukerman Co.*, 960 F.2d at 1034. On the other hand, in cases such as here where "there has been contact or a relationship between the parties during the delay period", "the length of delay, the seriousness of the prejudice, the reasonableness of excuses, and the defendant's conduct or culpability must be weighed to determine whether the patentee dealt unfairly with the alleged infringer by not promptly bringing suit." *Id.* "What is important is whether [defendant] had reason to believe it was likely to be sued." *Vaupel*, 944 F.2d at 878.

  a. <u>2007 Litigation</u>

The fact that other litigation is pending during the laches period may excuse a plaintiff's delay in bringing suit. "A patent holder may avoid the consequences of what would otherwise be an unreasonable delay in filing suit by establishing that he or she was engaged in 'other litigation.'" *Vaupel*, 944 F.2d at 876–77. The "other litigation" excuse generally applies to litigation with third parties. *See id.* at 877; (citing *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1573 (Fed. Cir. 1987) ("For other litigation to excuse a delay in bringing suit, there must be adequate notice of the proceedings to the accused infringer.")). Manifestly, prior litigation with the *same* party satisfies this standard. Even were the Court to accept Defendants' contention that the 2007 Litigation was a nullity in considering whether to apply a presumption of laches, the fact that Plaintiffs pursued that action cannot be ignored in considering whether Plaintiffs were involved in "other litigation" during the purported laches period. Defendants, who were parties to the 2007 Litigation, self-evidently had notice of those proceedings.

Accordingly, the fact that Plaintiffs were involved in "other litigation," or, more aptly, "litigation with Defendants" from May 2007 to November 2007, serves to excuse that period of Plaintiffs' purported delay in commencing this action.

    b. <u>Reexamination</u>

Proceedings before the PTO, such as reissue and reexamination proceedings, "should be treated similarly to infringement litigation for purposes of laches" because "[t]here is no demonstrable distinction for this purpose between judicial proceedings raising the issue of patent validity and a PTO proceeding involving patentability." *Vaupel*, 944 F.2d at 877.

On November 6, 2007, Plaintiffs informed Defendants that they voluntarily dismissed the 2007 Litigation to pursue reexamination with the PTO. (Dkt. 90-3.) Plaintiffs invited Defendants to participate, at least indirectly, in the reexamination. (Dkt. 90-3) ("Should you

have any other prior art . . . please let us know and we will include it in an Information Disclosure Statement filed in the case."). And Plaintiffs explicitly notified Defendants that the re-filing of the infringement, were it to proceed, was expressly contingent upon the conclusion of the patent reexamination. (*See* Dkt 90-3) ("Unless and until we have the patent certified by the Patent Office as having claims that overcome the Luckie patent and other prior art, we will not initiate an infringement suit against Vutec or its distributors.").

Again, "for other litigation to excuse a delay in bringing suit, there must be adequate notice of the proceedings to the accused infringer." *Vaupel*, 944 F.2d at 877 (citing *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1573 (Fed. Cir. 1987)). "The 'other litigation' excuse normally applies when a patentee defers suit against an alleged infringer until the conclusion of another lawsuit. If the party is ultimately sued and had received proper notice, the time delay consumed by the original proceeding may be excused in evaluating whether laches occurred." *Id.* It is undisputed that Defendants had notice and were aware of the patent reexamination and that further infringement litigation was contingent upon the validity of the 765 Patent. The reexamination process concluded on January 12, 2010, when the PTO confirmed the validity of the 765 Patent. (Defendant St. ¶ 9.) Plaintiffs commenced this action approximately two years later, on December 27, 2011. (Dkt. 1.)

Although Defendants make much of Plaintiffs' pledge to file for reexamination within two weeks of the dismissal of the 2007 Litigation, Defendants fail to demonstrate prejudice arising from Plaintiffs' admitted delay in seeking reexamination until five months thereafter. (Dkt. 91 ¶ 7.) Moreover, irrespective of when Plaintiffs sought reexamination, Defendants were aware that Plaintiffs' recommencement of its patent infringement claims was contingent upon the

resolution of the patent reexamination. In any event, the five-month period from dismissal of the 2007 Litigation to the filing of the reexamination was not unreasonable or inexcusable.

Defendants argue that the reexamination proceedings did not excuse Plaintiffs' delay in bringing this suit. For support, Defendants cite *Serdarevic v. Adv. Medical Optics, Inc.*, 532 F.3d 1352 (Fed. Cir. 2008). Defendants assert that *Serdarevic* rejected a claim that a proceeding before the PTO could constitute "other litigation" operating to excuse a plaintiff's delay in filing an infringement action, and submit that to the extent *Vaupel* may be applicable, "*Serdarevic* overruled *Vaupel sub silento* [sic]." (Dkt. 93 at 16.) Far from overruling *Vaupel*, *Serdarevic* explicitly re-affirmed *Vaupel* in a lengthy discussion of its principles. *Serdarevic* reaffirmed *Vaupel*'s conclusion that proceedings before the PTO may excuse a delay in bringing an infringement action under the "other litigation" exception in remarkably similar circumstances as here. The *Serdarevic* court acknowledged that "[b]ecause the infringer [in *Vaupel*] knew of and participated in the reissue proceedings, and because the patentee had made clear to the infringer that it would bring an infringement action after the reissue proceedings concluded, the patentee's delay was excusable." *Serdarevic*, 532 F.3d at 1359 (citing *Vaupel*, 944 F.2d at 877).

Defendant is correct insofar as *Vaupel* is distinguishable from the circumstances here because the potential infringer in *Vaupel* actively participated in the reissue proceedings, whereas Defendants did not participate directly in the reexamination proceedings. However, a defendant's participation in the "other litigation" is not the central consideration. Indeed, "other litigation" generally excuses a plaintiff's delay in bringing suit while the plaintiff pursues litigation against *other* parties, so long as the potential infringer in the later suit has knowledge of the prior litigation. *See Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992) ("the delay involved here could not be considered unreasonable and inexcusable" where

13

patentee previously "was busy enforcing his patent rights elsewhere"); *Serdarevic*, 532 F.3d at 1359 (citing *Vaupel*, 944 F.2d at 877) ("What is important is whether [the defendant] had reason to believe it was likely to be sued."). The central factor in "other litigation" is a defendant's notice. It is irrelevant for purposes of laches whether Defendants participated in the reexamination proceedings, so long as Defendants had notice of the other litigation and "had reason to believe [they were] likely to be sued." It is indisputable that this was the case here, as Plaintiffs expressly informed Defendants that further infringement litigation was contingent upon the disposition of the reexamination of the 765 Patent. Therefore, the reexamination proceedings constituted "other litigation" which operated to excuse Plaintiffs' delay in bringing suit during the pendency of those proceedings.[2]

---

[2] Defendants rely on *Serdarevic* for the propositions that the issuance of a reexamination certificate does not automatically reset the six-year clock for the presumption of laches and that the "mere possibility" that a patent might be amended or limited during the reexamination process does not excuse a patent holder's delay in filing suit. This reliance is clearly misplaced because of two critical facts that distinguish *Serdarevic* from this case. (Dkt. 93 at 14); *Serdarevic*, 532 F.3d at 1359. First, the plaintiff in *Serdarevic* initially made contact with the eventual defendant in 1999, but made no further contact with defendant until bringing suit in 2006, *i.e.*, *after* the six-year presumption of laches would apply. *Serdarevic*, 532 at 1357. Second, the reexamination proceeding in *Serdarevic* was initiated by the defendant, not the plaintiff. *Id*. at 1359. Accordingly, the Federal Circuit found that the "'other litigation' excuse" applied in *Vaupel* [was] inapplicable . . . . [because the plaintiff] was not engaged in any "other litigation" that would have excused her delay in bringing her ownership claim . . . . [and the plaintiff] offered no evidence suggesting that the defendants had reason to believe that they were likely to be sued once the reexamination proceedings were complete." *Id*. As discussed previously, that is not the situation here, where Defendants were on notice throughout the relevant time frame that a lawsuit was likely.

In addition, the cases cited by Defendants to show that "laches is routinely granted in patent infringement cases" all involve periods of delay greater than the circumstances here. *See, e.g.*, *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334 (Fed Cir. 1998) (approximately 13-year delay); *Serdarevic v. Adv. Medical Optics, Inc.*, 532 F.3d at 1359 (eight-year delay); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553 (Fed. Cir. 1996) (approximately 12-year delay); *Gossen Corp. v. Marley Mouldings, Inc.*, 977 F. Supp. 1346, 1351 (E.D. Wis. 1997) (approximately eight-year delay). And in any event, in each of these cases, the allegedly infringing party had no prior

c. Ongoing Negotiations

A plaintiff's involvement in "other litigation" is not the only excuse for delay in bringing suit for laches purposes. The laches time period, which begins running from "the time the patentee knew, or in the exercise of reasonable diligence should have known, of the alleged infringing activity," *Jamesbury Corp. v. Litton Industrial Prods., Inc.*, 839 F.2d 1544, 1551–52 (Fed. Cir. 1988), is tolled during ongoing licensing negotiations. But only periods of "sincere and productive negotiations do not count for laches purposes." *Peyser v. Searle Blatt & Co., Ltd.*, 99-CV-10785(WK), 2000 WL 1071804, at *6 (S.D.N.Y. Aug. 2, 2000) (citing cases). To toll laches, negotiations must "ordinarily be continuous and bilaterally progressing, with a fair chance of success." *A.C. Aukerman Co., v. Miller Formless Co., Inc.* 693 F.2d 697, 700 (7th Cir. 1982).

The parties here have a long history of negotiation with respect to licensing of the 765 Patent. Negotiations began on July 1, 2005, when Plaintiffs apprised Defendants of the potential infringement and raised the possibility of a licensing agreement. (Plaintiff St. ¶ 15.) Defendants responded, asserting the invalidity of the patent based upon prior art, and cautioned that Defendants may seek reexamination of the patent on that basis and others. (Plaintiff St. ¶ 16.) Thereafter, those negotiations continued, with varying frequency, until December 3, 2010. (Plaintiff St. ¶ 42.)

Defendants contend that the licensing negotiation period, which intermittently spanned from July 1, 2005 to December 3, 2010, is irrelevant for laches purposes because the negotiations

---

knowledge of its potentially infringing activity, let alone were they involved in prior litigation with the same plaintiffs over the same patent.

were not "continuous and bilaterally progressing, with a fair chance of success."  (Dkt. 94 at 4.)  However, the extensive evidence of the back-and-forth negotiations, discussed below, reveals that the licensing negotiations indeed were continuous and progressing with a fair chance of success throughout the relevant periods, thus tolling laches.

Here, Plaintiffs initiated negotiations in a letter dated July 1, 2005.  (Plaintiff St. ¶ 15.)  From July 1, 2005 to November 20, 2007, when the first round of negotiations ended, the longest break in communications was the eight-month period from August 2, 2005 to March 17, 2006.  (*See* Plaintiff St. ¶¶ 17–18.)  Plaintiffs sought reexamination of the 765 Patent on April 2, 2008, and the Patent Office recertified the 765 Patent on January 12, 2010.  (Plaintiff St. ¶ 33.)  Plaintiff reengaged Defendants in negotiations even before the 765 Patent was recertified, in a letter dated December 14, 2009.  (Plaintiff St. ¶ 34.)  During the second negotiation period, which lasted from then until approximately December 3, 2010 (approximately three weeks before this action was commenced), the longest break in the negotiations was a mere four months between correspondence of May 27, 2010 and September 21, 2010.  (Plaintiff St. ¶¶ 39–40.)

The above periods of negotiation reflect a series of "sincere and productive" negotiations that had a "fair chance of success."  Even under Defendants' proposed standard requiring negotiations to be "continuous and bilaterally progressing, with a fair chance of success," the circumstances here satisfy that standard.  *See A.C. Aukerman Co.*, 960 F.2d at 1033; *Katz*, 712 F. Supp. 2d at 1110.  Therefore, the entirety of the periods during which the parties negotiated a license agreement for the 765 Patent do not count towards the calculation of laches.

Defendants are correct that there were several periods of silence between the parties.  (*See* Plaintiff St. ¶¶ 15–42; Dkt. 94 at 4.)  But those periods of silence were not so protracted as to indicate a breakdown in or end to the negotiation process.  The cases to which Defendants cite

for support that the negotiations here were not progressing all feature substantially different circumstances from here. For example, in *In re Stuart Meyers Patent Litig. v. Brooks Shoe, Inc.*, the trial court held that the negotiations did not toll laches where "none of the defendants indicated they were prepared to pursue negotiations to a successful conclusion. In fact, plaintiff's inquiries to defendants regarding licensing constituted no more than offers to negotiate on the part of the plaintiff, an offer defendants refused." 731 F. Supp. 640, 641–42 (S.D.N.Y. 1990). By contrast, Defendants here acknowledge that on multiple occasions they not only agreed to enter into negotiations over a license with Plaintiffs, but told Plaintiffs numerous times that they were amenable to a license. (*See* Dkt. 92-13) ("our client is still amenable to paying your client a royalty [that] could result in your client receiving very reasonable return on their investment given the very precarious nature of their property rights."); (Dkt. 92-21) ("As we indicated during our prior discussions, our client may be amenable to a license if the terms are reasonable."); (Dkts. 92-22, 92-23) ("our client remains amenable to a license under extremely reasonable terms merely to avoid the expensive of litigation"); (Dkt. 92-25) ("Our client is open to a very reasonable license given the extremely tenuous nature of your client's property right, if any."). It was not until December 3, 2010, the final negotiation correspondence between the parties, that Defendants definitively rejected Plaintiffs' settlement offer. (Dkts. 92-26, 92-27.) This correspondence reflects precisely the type of back-and-forth correspondence common to negotiations. Defendants' frequent indications of amenability to a license agreement demonstrate that the negotiations were fruitful, were progressing towards a resolution, and bore, at the very least, a "fair chance of success." *Katz*, 712 F. Supp. 2d at 1110. Nothing before the December 3, 2010, correspondence indicated that the negotiations had ceased or were not potentially fruitful.

In *In re Katz Interactive Call Processing Patent Litig.*, also cited by Defendants, the district court *rejected* the argument that the negotiations were "sporadic." 712 F. Supp. 2d 1080, 1110 (C.D. Cal. 2010), *vacated in part and remanded in part on other grounds in* 639 F.3d 1303 (Fed. Cir. 2011). The court there found that the correspondence between the parties, which ranged from November 1996 through June 2002, established that the negotiations were bilateral and had a fair chance of success up until the conclusion of the negotiations, when the parties failed to reach an agreement. *Id.* at 1110–11. There, the negotiations proceeded with substantial stretches of time between correspondence, including a one-year span between a party's initial and second letters, two intervals of six months, and another of 11 months. *See id.* at 1110.

In sum, Plaintiffs' pursuit of other litigation, both in federal court and before the PTO, as well as its negotiations with Defendants between July 2005 and December 2010, provided timely and ample notice to Defendants regarding Plaintiffs' infringement claim. The Court therefore finds that Plaintiffs did not unreasonably or inexcusably delay in bringing suit, and laches does not apply to bar damages arising from Defendants' alleged infringement prior to this lawsuit.

III.    Intentional Infringement and Unclean Hands

In light of the Court's finding that laches does not apply to bar this action, it is unnecessary to address Plaintiffs' arguments regarding Defendants' alleged intentional infringement or Defendants' arguments regarding Plaintiffs' unclean hands, and the Court declines to do so.

*CONCLUSION*

Defendants have failed to prove that there is no genuine issue of material fact with respect laches. Defendants have not established that a presumption of laches applies or that Plaintiffs otherwise unreasonably and inexcusably delayed in bringing this action in a manner

18

unfairly prejudicial to Defendants.  Accordingly, Defendants' motion for summary judgment is denied.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: September 9, 2013
　　　　Brooklyn, New York